# Illinois Official Reports

## Appellate Court

***In re Marriage of Coviello*, 2016 IL App (1st) 141652**

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF KELLIE S. COVIELLO, Petitioner-Appellant, and JASON R. COVIELLO, Respondent-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-1652 |
| Rule 23 order filed<br>Rule 23 order<br>withdrawn<br>Opinion filed | August 11, 2016<br><br>September 1, 2016<br>October 27, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-D-04857; the Hon. Thomas J. Kelley, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Paul L. Feinstein, of Chicago, for appellant.<br><br>Marshal P. Morris, of Buffalo Grove, for appellee. |
| Panel | PRESIDING JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justices Howse and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1        Petitioner, Kellie S. Coviello (Kellie), appeals from the trial court's judgment for dissolution of her marriage to respondent, Jason R. Coviello (Jason). The issue before this court is whether the trial court abused its discretion in not awarding Kellie the survivor benefit of Jason's military retirement plan.

¶ 2        We hold that the court did not abuse its discretion. The trial court, both in writing and orally from the bench, discussed several factors it considered in trying to strike an equitable distribution between the parties. We find no basis to disturb that judgment and thus affirm.

¶ 3                                    I. BACKGROUND
¶ 4                     A. General Background of the Parties and the Litigation
¶ 5        Jason is a naval officer. He began his service in the United States Navy on July 29, 1991, approximately 12 years before the parties married in 2003. The parties have one minor child who was born in 2005. In May 2011, Kellie separated from Jason and filed a petition for dissolution of marriage. The trial in this case took place over four days in 2013: February 13, February 14, March 20, and March 21. At the time of trial, Kellie was 43 years old, Jason was 41 years old, and the minor child was 8 years old.

¶ 6        Kellie received a degree in English in 2012. At the time of trial, she was a student working toward a master of divinity degree, with an expected graduation date of May 2017. She testified that she believed she would earn $40,000 to $50,000 in her first position. Once she becomes a minister, she could earn between $40,000 and $140,000.

¶ 7        Jason expects to continue in the military and does not know when he will retire. Jason's pay includes a base rate and certain allotments that vary and are based on numerous factors, including where he is stationed. The trial court noted that, because of additional allotments Jason received in 2011 and 2012, his gross income for those years was higher than in 2013. The trial court noted that Jason's gross income was $122,503.73 in 2011, $109,490.22 in 2012, and $83,562.00 in 2013 before entitlements. Jason testified that his gross income was approximately $109,000 in 2013. He was expecting to receive $104,000 in 2014. Jason's pension will be based on his highest 36 months of base pay, which could be the last three years he works for the Navy or could be some other three years. Before getting the pension benefit, the Navy will deduct, off the top, the premium for the survivor benefit plan.

¶ 8        Slightly more than half of Jason's pension is nonmarital property, because it was accrued before Jason and Kellie married. Jason joined the military on July 29, 1991, and married Kellie on May 8, 2003. Thus, at the time of the trial court's final order on April 30, 2014, approximately 12 years of Jason's pension was nonmarital property and nearly 11 years was marital property, a roughly even split. Because the parties had agreed that Kellie would receive half of the marital portion, this meant that, at the time of the court's ruling, Kellie received about one-half of one-half of the pension, or 25%, while Jason received 75%.

¶ 9        Jason has a $400,000 life insurance policy through the Navy. At the time of trial, the minor child was the beneficiary of $300,000, and Jason's father was the beneficiary of $100,000.

¶ 10                           B. Military Survivor Benefits

¶ 11        That brings us to Jason's military survivor benefit plan. Though the parties disagree on whether the trial court should have awarded military survivorship benefits to Kellie, there is no disagreement on how these plans operate.

¶ 12        Military survivor benefit plans "are a creature of Federal law," and "[a]ny right to create, modify, or revoke such plans is prescribed by Federal statutes." *In re Marriage of Lipkin*, 208 Ill. App. 3d 214, 218 (1991); see also 10 U.S.C. §§ 1447 to 1455 (2012). The survivor benefit plan provides benefits to a survivor after the service member's death. As a "former" spouse, Kellie would not be entitled to a survivor benefit unless Jason voluntarily elected her as the beneficiary or was ordered to do so by the court. See 10 U.S.C. § 1448(b)(2)(A) (2012) (former spouse may be voluntarily named as beneficiary); 10 U.S.C. § 1450(f)(4) (2012) ("A court order may require a person to elect *** to provide an annuity to a former spouse ***.").

¶ 13        Survivor benefits are not divisible, meaning if Jason named Kellie as the beneficiary of the survivorship benefits, he could not name a future spouse as well—he could not split the benefits between them. 10 U.S.C. § 1448(b)(2)(B) (2012) (naming a "former spouse" as beneficiary "prevents payment of an annuity to" a current spouse). In this way, the question of the survivorship benefit, unlike many other questions regarding marital property, is very much an all-or-nothing proposition; the trial court was faced only with the options of giving all of the survivor benefits to Kellie or none of them.

¶ 14        The amount of survivor benefit may be elected by the service member; that is, Jason could decide how much of his military retirement pay should be included (to a limit, not relevant here) and then would have to pay premiums (6.5% of the gross retirement pay selected) based on the amount selected. So if the court awarded Kellie this survivorship benefit, Jason's monthly pension payment (and thus Kellie's share, too) would be reduced accordingly by the premiums paid for that benefit.

¶ 15        Two other aspects of military survivorship plans are of note here. First, even if Kellie were named as the beneficiary, were she to remarry before the age of 55, she would lose the survivor benefit. Second, if Kellie were to die before Jason, Kellie's estate would not be entitled to the survivor benefit.

¶ 16                           C. The Circuit Court's Ruling

¶ 17        The court issued its oral ruling on April 18, 2014, and entered its written judgment for dissolution of marriage on April 30, 2014. Regarding the survivor benefit, the written judgment states:

> "If [Kellie] is enrolled in the Survivor Benefit Plan on [Jason's] pension, the parties' monthly retired pay would be reduced. The Court finds that it would be unequitable to award [Kellie] the Survivor Benefit on [Jason's] military pension, as more than 50% of his pension is non-marital. The parties agree that [Kellie] should receive 50% of the marital portion of [Jason's] military pension. The Court further finds that it would be devastating financially if [Kellie] were to lose her share of the marital portion of [Jason's] military benefit prior to the minor child becoming emancipated."

¶ 18        The court further explained its reasoning in its oral ruling. The court noted that the facts of this case were undisputed. The parties had agreed that Kellie should receive half of the marital portion of Jason's military pension, which would be approximately $930 gross per month if

Jason were to retire that day (and approximately $800 after taxes). The actual amount will depend on the date Jason retires and the salary he earns in the coming years (which could increase or decrease). The court acknowledged that, unless Kellie received the survivor benefit, she would receive her monthly pension benefit only so long as Jason is alive.

¶ 19 In discussing the survivor benefit, the court acknowledged the parties' ages, that they had been married 11 years, and that the last 3 of those years had been "spent fighting in divorce court." The court also discussed the contingent nature of the benefit. If Kellie remarried before the age of 55, she would not be entitled to the survivor benefit. Also, if Kellie died before Jason, her estate would not get the benefit. The court found that the value of the survivor benefit in this case was not determinable.

¶ 20 The court noted that Jason is not retired and that, although the parties could "tell the court that the benefit is calculated on a percentage of the base pay," the parties did not know how long Jason would stay in the military and did not know what the amount of the monthly premium would be.

¶ 21 The court also took into consideration that Jason wanted the option to name a future wife as the beneficiary of the survivor benefit, which he would be unable to do if it were awarded to Kellie. As the court reasoned: "Jason's 41 years old. It would be unfair to Jason if he were married *** if he remarried, had a long marriage of 30 years, and was unable to give his new wife the survivor benefit." The court noted that it could not divide the survivor benefit between Kellie and some future spouse; she either received all of it or none of it. The court also took into account that premiums for the survivor benefit come out of the pension payments, 75% of which belong to Jason, and thus, were the court to award the survivor benefit to Kellie, Jason would receive none of the benefit but disproportionately pay for the cost.

¶ 22 On the other hand, the court also considered Kellie's interests and noted that "it would be unfair to Kellie and the minor child [who was eight years old at the time of the ruling] if Jason passed away in the near future and Kellie lost that additional income from Jason's pension."

¶ 23 The court found that "the fairest and best way to handle this issue" was to have Kellie named as the beneficiary of Jason's $400,000 life insurance policy; specifically, with the minor child as the beneficiary of $200,000 to secure Jason's child support obligations and Kellie as the beneficiary of the remaining $200,000. The court also found that it would be financially devastating to Kellie if she lost her pension benefit before the minor child became emancipated and that it was in Kellie's best interest for Jason to keep her as the beneficiary of $200,000 of any life insurance proceeds until the minor child was emancipated. The court also ordered that Jason pay the premiums on the life insurance policy.

¶ 24 The court found that Kellie's portion of the life insurance would secure the loss of the survivor benefit of Jason's military pension (should he die), as well as the $50,000 lump sum maintenance award. The court explained its reasoning: "[I]t's cheaper and the parties really can't afford [an] additional life insurance policy at this time." As the court further explained, Kellie could choose to secure additional life insurance on Jason's life, at her own expense. The court also reduced the portion of the life insurance awarded to the minor child by $20,000 per year once the child turned 14, which would continue until the child graduated from college or turned 23, whichever was later.

¶ 25 Kellie appeals from the trial court's decision not to award her the survivor benefit of Jason's military pension.

II. ANALYSIS

¶ 27    Kellie raises one issue on appeal. She argues that the trial court erred in its failure to award her the survivor benefit of Jason's military retirement plan.

¶ 28    A trial court's distribution of marital assets will not be disturbed unless the court clearly abused its discretion. *In re Marriage of DeRossett*, 173 Ill. 2d 416, 422 (1996). A court abuses its discretion only where no reasonable person would take the view adopted by the trial court. *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 52. The test of proper apportionment of marital property is whether it is equitable, and each case rests on its own facts. *In re Marriage of Smith*, 2012 IL App (2d) 110522, ¶ 71.

¶ 29    The primary issue Kellie takes with the circuit court's ruling is the court's finding that the survivor benefit was not determinable. Property that cannot be given a value because of its speculative or contingent nature in the future is not considered marital property subject to division. See, *e.g.*, *In re Marriage of Abrell*, 236 Ill. 2d 249, 266-67 (2010) (accrued vacation and sick days were not marital property subject to division, as they had only a "future value" that was indeterminate, speculative, and uncertain).

¶ 30    Kellie argues that survivor benefits are marital property, despite their somewhat contingent nature. She relies primarily on *Lipkin*, 208 Ill. App. 3d at 219, which did indeed hold that a survivor benefit constituted marital property, albeit in a setting where the husband had already retired and thus his length of service and the amount of pay on which the survivor benefit was based was fixed, not speculative. Other decisions have likewise held or noted in *dicta* that survivor benefits are considered marital property. See *In re Marriage of Moore*, 251 Ill. App. 3d 41, 44 (1993) (survivor benefit "is a property interest to be distributed in the dissolution proceeding. Even though it is of a contingent nature, a survivor's benefit has a determinable value, computed by using life-expectancy tables, and it is properly considered a marital asset."); *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 302 (2000) (citing *Moore* and noting that death benefit in that case was "similar to a survivor benefit, which has been held to be a 'distinct property interest' and, though contingent in nature [citation], it, like any other property right created by a judgment of dissolution, becomes a vested right when the judgment is final").

¶ 31    Jason, on the other hand, argues that the value of the survivor benefit is too speculative under the facts of this case, given such unknowns as his length of service, which spouse will survive the other, and Kellie's future marital status. He, too, can cite supporting case law. See *Kew v. Kew*, 198 Ill. App. 3d 61, 66 (1990) (in dividing up marital assets equally, trial court did not abuse discretion in failing to credit wife's surviving-spouse annuity, as trial court was "cognizant of the potential unfairness of these valuations should the life expectancy assumptions prove to be incorrect").

¶ 32    It is not necessary for us to decide this question, because even if the survivor benefit were marital property, the circuit court was not required to award it to Kellie. The circuit court's ruling could be affirmed even under the assumption that the survivor benefit was marital property, as long as the division of assets was equitable when considering the overall circumstances of this case. See *Smith*, 2012 IL App (2d) 110522, ¶ 71. In other words, if we find that the court did not abuse its discretion in denying Kellie survivor benefits, we may affirm the court's judgment even if we disagreed with the reason the trial court denied it. See *City of Chicago v. Holland*, 206 Ill. 2d 480, 491-92 (2003) (reviewing court considers trial court's judgment, not reasoning, and thus reviewing court "can sustain the decision of the

circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was sound").

¶ 33 Indeed, as we read the judge's reasoning below, we do not think the court was ruling that the survivor benefit was not marital property. If that had been its ruling, it would have had no reason to continue discussing the equities of the case (that Jason had earned more of his pension premarriage, that he would have to pay for the survivor benefit disproportionately, that he would be forever denied the option of naming a future wife as beneficiary). None of these facts would have been relevant if the trial court believed that the survivor benefit was not marital property in the first place; such a finding would have been the beginning and end of the discussion, barring Kellie from any entitlement to that benefit.

¶ 34 It is true that the trial court noted that there were various contingencies involved in valuing the survivor benefit—the length of Jason's employment in the military, whether Kellie remarried before the age of 55, the amount of the monthly premium—that rendered its value indeterminate, but we read that as part of the trial court's weighing of the equities in determining a fair result for the parties, not a legal ruling on the marital versus nonmarital status of the property interest. It seems just as likely to us that the trial court was considering the contingent nature of the survivor benefit in comparison to the less contingent nature of the life insurance that the court ordered Jason to pay for on Kellie's behalf as a substitute for the survivor benefit.

¶ 35 In any event, whether the trial court believed that the survivor benefit was not marital property (which we doubt) or that it was marital property but should not be awarded to Kellie (the interpretation we favor), the trial court's distribution of assets, and in particular its denial of survivor benefits to Kellie, was not an abuse of discretion. The trial court carefully considered a number of factors as it tried to reach a fair result for the parties, including the length of Jason's premarriage military service; the fact that Kellie's estate would not get the survivor benefit if Kellie predeceased Jason but *would* get life insurance benefits in that scenario; and the fact that Jason was relatively young, could well have a long-lasting second marriage, and should be able to name any future spouse as a beneficiary. And as we have noted, the trial court did not deny Kellie the survivor benefit in a vacuum; it awarded her insurance on Jason's life, at Jason's expense, to compensate for the lack of a survivor benefit. The court expressly stated that it felt this was the fairest result for the parties. We cannot say that its judgment was so arbitrary that no reasonable person would agree with the trial court.

¶ 36 On April 20, 2016, after full briefing of this appeal, we granted Kellie's motion for leave to cite additional authority, namely, an amendment to the Uniformed Services Former Spouses' Protection Act (amending 10 U.S.C. § 1448 (2012)). The amendment, titled "Effect of death of former spouse beneficiary," provides, in part, that where a former spouse has been elected to receive the survivor benefit, and the "former spouse subsequently dies," the member can "elect a new spouse beneficiary." Pub. L. No. 114-92, § 641, 129 Stat. 852-54 (amending 10 U.S.C. § 1448(b)(7)). In other words, if Kellie were to be awarded the survivor benefit, and Jason remarried, he could elect to have his new spouse as the beneficiary, *but only after Kellie dies*. Although we allowed Kellie's motion, we conclude that the amendment does not affect the disposition of this appeal.

¶ 37 Jason correctly notes that the judgment for dissolution of marriage was entered one year and eight months prior to the effective date of the amendment. Jason argues that, if this court

were to reconsider the judgment for dissolution of marriage with this statutory amendment in mind, it would be contrary to the Marriage and Dissolution of Marriage Act, which seeks finality between the parties. He claims that if this court were to reconsider judgments based on legislative acts passed after the date of the final judgment, it would open the floodgates to unending, perpetual litigation and allow petitioners to go behind every court decision entered. Finally, Jason argues that the statutory amendment is not retroactive.

¶ 38 We do not need to get into the questions of finality and retroactivity, because this statutory amendment would not change our holding in any event. It is true that one of the reasons that the trial court felt it would be unfair to give Kellie the survivor benefit was that it would deny Jason the ability to name a future spouse as beneficiary, even if he had a long and happy marriage to that person. This statutory amendment does not alleviate that concern in whole; it alleviates it only to the extent that Jason would now be freed up to name a new spousal beneficiary if Kellie died before he did, obviously an unknown at this point.

¶ 39 And the circuit court articulated more than one reason why it thought it would be inequitable to give Kellie the survivor benefit, as we have discussed above, to say nothing of the life insurance coverage that the court ordered Jason to provide as compensation for the lack of a survivor benefit. This statutory amendment does not tip the scales so significantly that it changes the result.

¶ 40 We appreciate that Kellie may consider it harsh that she was denied all survivor benefits, but the unfortunate fact is that this asset was not divisible; the judge faced an all-or-nothing proposition. The court decided that the most equitable result was to deny her the survivor benefit but to order Jason to name her and their child as beneficiaries of a life insurance policy, first and foremost to ensure that Kellie received some compensation for the loss of survivor benefits and to ensure the financial well-being of their child at least during his childhood. We cannot say that the court's judgment was arbitrary or fanciful or that no reasonable person would adopt the view of the trial judge. We affirm the trial court's ruling in all respects.

¶ 41 III. CONCLUSION

¶ 42 The judgment of the circuit court is affirmed.

¶ 43 Affirmed.