NOTICE
Decision filed 11/25/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190484-U

NO. 5-19-0484

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| MATTHEW A. ZUBER, | ) | Richland County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 17-D-6 |
| | ) | |
| AMANDA L. ZUBER, | ) | Honorable |
| | ) | Kimbara G. Harrell, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court.
Presiding Justice Welch and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not abuse its discretion in valuing and allocating marital assets and debts, in deviating from child support guidelines, in denying the husband's request for participation in a survivor benefit plan for the wife's military pension or an insurance plan on his behalf, or in denying the husband's request to order wife to apply for military retirement benefits as soon as administratively possible. However, the circuit court abused its discretion in failing to include the wife's military allowance for housing as income to determine the propriety of a maintenance award for the husband, and thus, the court must reconsider the propriety of a maintenance award and an attorney fee award.

¶ 2    The petitioner, Matthew A. Zuber, appeals the judgment entered by the circuit court of Richland County dissolving his marriage with the respondent, Amanda L. Zuber.

1

On appeal, Matthew argues that the circuit court's valuation of marital assets and debts was against the manifest weight of the evidence and that the circuit court abused its discretion by denying his request for maintenance, abating child support during the summer months that Amanda exercised her parenting time with their four children, denying his request to order Amanda to participate in a Survivor Benefit Plan for his benefit, denying his request for attorney fees, and declining to order Amanda to apply for military retirement benefits as soon as administratively possible. For the following reasons, we affirm in part and reverse in part the circuit court's judgment, and we remand the cause to the circuit court for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4     The parties, both graduates of Rose-Hulman Institute of Technology, were married on October 13, 2007. Two months later, in December 2007, Matthew was injured in an automobile accident and was thereafter determined to be disabled by the Social Security Administration, although he continued to work intermittently until 2013. Four children were born of the marriage: X.M.Z., born August 24, 2008; E.L.Z., born June 17, 2010; R.P.Z., born March 27, 2012; and J.M.Z., born November 21, 2013. On February 6, 2017, Matthew filed a petition for dissolution of marriage, and on May 1, 2017, Amanda filed a counterpetition for dissolution of marriage.

¶ 5     On September 24, 2018, the parties entered into an approved parenting plan regarding parenting responsibilities and parenting time with the four children. The parties agreed that Matthew would have primary parenting time with the children, subject to Amanda having one weekend per month parenting time with the children, along with

2

alternating holidays and an extended eight-week period of parenting time over the summer break, with two three-day summer parenting time periods allotted to Matthew. In addition to her monthly child support obligation, Amanda remained solely responsible for the children's health insurance premiums and uncovered medical expenses, in addition to all traveling expenses associated with her and the children's parenting time, which would include transportation to California, where Amanda lived.

¶ 6 On September 24, 2019, and September 27, 2019, the circuit court heard evidence on the identification and division of property, child support, maintenance, and attorney fees. At the hearing, Amanda testified that she was 35 years old and had lived in California since March 2017. Amanda testified that she received her undergraduate degree in Electrical Engineering Technology and was ranked a major in the United States Air Force. Amanda testified that she had been stationed in Ohio for four years and nine months and Florida for five years and that she transferred to San Pedro, California, in April 2014. Amanda testified that from July 2016 to February 2017, she was deployed overseas but returned to California in February 2017. Amanda testified that in December 2018, she would be relocating from San Pedro, California, 200 miles north to Lompoc, California. Amanda testified that her new duty station at Vandenberg Air Force Base in Lompoc, California, would render travel more difficult because she would be located farther from a major airport, would have to drive a longer distance, and/or would incur more expensive flights to exercise her parenting time with the children.

¶ 7 Amanda testified that in June 2019, the promotion board met to consider her promotion to lieutenant colonel, but she had not yet been notified of the decision.

Amanda testified that her September 30, 2018, pay stub revealed that she earned a base pay of $7647.60 per month, in addition to a basic allowance for subsistence of $254.39, a basic allowance of housing (BAH) of $3777, and a cost of living allowance of $53. Accordingly, Amanda testified that she received $11,731.99 monthly, $140,783.88 annually, in gross pay. Amanda testified that she received an increase in pay every rank promotion and every two years. Amanda testified that although she had not signed a lease on an apartment or house, her initial inquiries revealed that in the near future, her BAH would recalculate to $2174 because the children would be primarily residing with Matthew, and she would receive less as a single person without dependents who reside with her for the majority of the time. Amanda explained that without dependents, she would not qualify for base housing, that the BAH is only 80% of living expenses on the open market, and that the BAH would not cover rent or utilities. Amanda also testified that the $53 a month that she received for a cost of living adjustment would be zero in her new duty station.

¶ 8    Amanda testified that if she were to serve in the military for 20 years, she would be eligible to receive a military retirement pension, calculating to, at most, 50% of her base pay, for life. Amanda testified that if she elected the Survivor Benefit Plan available through her employment, premium payments would be withdrawn from her retirement pay. Amanda asserted that if she were to later remarry, she would prefer that her second spouse have the option to become the benefactor of the Survivor Benefit Plan.

¶ 9    Amanda testified that the current value of her Roth IRA account equaled $90,961.43, that the current balance of her Thrift Savings Plan, as of September 21, 2018,

4

equaled $165,221.04, and that her current checking account balance equaled approximately $1700. Amanda testified that except for an outstanding balance of $2000, all of her remaining attorney fees had been paid. Amanda testified that she had no interest in managing the parties' properties located in Illinois and Indiana. Amanda testified that she searched the Zillow.com website to determine values of the rental homes. Over objection, Amanda testified that Zillow.com valued the Paris, Illinois, home in the low $30,000s.

¶ 10    Matthew testified that he was 37 years old and lived in Olney, Illinois, in a home he purchased in February 2017. Matthew testified that he graduated in 2003 with a Bachelor of Science degree in mechanical engineering. Matthew testified that in December 2007, he was injured in an automobile accident. Matthew testified that he received injuries to his neck and back and was ultimately determined by the Social Security Administration to be totally disabled and physically unable to engage in gainful employment for which there is a stable labor market. Matthew testified that he continued to experience headaches and chronic pain through his left arm and left leg, his neck and face, and throughout his back. Matthew testified that he had been unable to find a full-time job in the labor market that could accommodate his restrictions, pain, and limitations.

¶ 11    Matthew testified that he received monthly gross disability income of $1863 and that a $134 medical insurance premium is deducted from his gross income. Matthew testified that he received a dependency benefit of $233 per child, totaling $932 per month. Matthew testified that he and Amanda established accounts for each child to

5

deposit funds from birthday gifts, a lump sum social security disability payment, and the social security dependency benefits. Matthew testified that the children's accounts each held approximately $10,000.

¶ 12    Matthew testified that he transferred funds from a California bank account to an Illinois account, in order to purchase a new vehicle. Matthew testified that $22,000 remained in the Illinois account because he did not have the opportunity to buy a new vehicle. Matthew testified that he paid $21,547.75 as a down payment for the family home in Olney and deposited $13,000 in X.Z.'s savings account, $12,000 in E.Z.'s' savings account, $10,500 in R.Z.'s savings account, and $9250 in J.Z.'s savings account. Matthew testified that from this transfer, he also paid $7500 in attorney fees, $2500 payment to Heller Homes, and $6000 in escrow. Matthew testified that the 2003 Dodge Caravan and the 2012 Dodge Caravan in his possession were in disrepair. Matthew testified that he drove the 2012 Dodge Caravan, which had over 98,000 miles on it, along with problems with the front suspension, tie rod, bushings, brakes, muffler, windshield, and electrical system. Matthew testified that in 2003 and 2005, he purchased two Terre Haute, Indiana homes as rental homes but that they do not currently house renters. Matthew testified that the homes needed repairs to become rentable. Matthew acknowledged, however, that significant marital funds were used to improve property located at 1547 South 20th Street in Terre Haute, Indiana (the 1547 Terre Haute property).

¶ 13    With regard to the parties' standard of living during the marriage, Matthew testified that the parties would have been considered upper middle class because they

lived in nice houses, wore new clothes, and owned a 30-foot boat. Matthew testified that they enjoyed extravagant birthday parties and frequent vacations. Matthew testified that he and the children's standard of living had lowered since the parties' separation.

¶ 14 Matthew testified that the county assessor's property tax statement showed the fair cash value of the Olney, Illinois, family home as $124,953. Matthew testified that he purchased the Olney home in 2017 for $119,000 and used funds for repairs thereafter. Matthew testified that the balance of the mortgage on the home was $91,000.

¶ 15 Matthew testified that he managed three properties in addition to the family home in Olney: two in Terre Haute, Indiana, and one in Paris, Illinois. Matthew testified that he valued the 1547 Terre Haute property at $40,000, although the house was in need of repairs. Matthew testified the mortgage loan balance on the property equaled $30,141.41 as of August 17, 2018. Matthew acknowledged that Amanda valued the 1547 Terre Haute property at $52,900 and that the Vigo County tax assessor valued the 1547 Terre Haute property at $54,100. Matthew testified, however, that he believed these assessments were incorrect and too high. Matthew testified that the 1547 Terre Haute property had been leased within the prior six months, generating $500 to $750 in monthly rent.

¶ 16 Matthew testified that the fair market cash value of the property located at 1545 South 20th Street in Terre Haute, Indiana (the 1545 Terre Haute property), equaled $12,000 and that the home was in need of extensive repairs, including new siding, windows, soffits, gutters, carpet, paint, trim, doors, landscaping, and a fence. Matthew testified that this property was subject to an outstanding mortgage balance of $9785.59. Matthew testified that the house located on the 1545 Terre Haute property had not been

leased for over a year due to necessary repairs that had not been completed. Matthew acknowledged that Amanda valued the 1545 Terre Haute property at $37,476 and that the Vigo County tax assessor valued the 1545 Terre Haute property at $38,500.

¶ 17 Matthew testified that Amanda's mother quit-claimed the Paris home to them to gain eligibility for public aid. Matthew testified that the Paris home was beyond repair. Matthew estimated that it would cost $14,000 to tear it down and remove the debris. Matthew acknowledged that Amanda valued the Paris property at $32,513.

¶ 18 Matthew testified that after his automobile accident in 2007, he continued to work intermittently until 2013. Matthew testified that "[t]here were points where [he] could have continued [his] career *** [even through the pain]." Matthew testified, however, that the military lifestyle required him to continue to sacrifice. Matthew testified that he would have liked to have continued his education and increased the level of his employment.

¶ 19 Matthew testified that when the dissolution proceedings started, he was served with a petition for dissolution of marriage and summons issued from a California court, where Amanda filed for dissolution of marriage. Matthew testified that he incurred substantial attorney fees to have the courts determine that Illinois was the home state of the children, where the dissolution proceedings should move forward.

¶ 20 On October 1, 2018, Matthew submitted alternative child support calculations based on whether or not the circuit court awarded maintenance. In the scenario where the circuit court denied Matthew's request for maintenance, Matthew submitted that monthly child support calculated to $2322.98.

¶ 21 On October 24, 2018, Matthew filed a petition for attorney fees. In his petition, Matthew argued that Amanda had paid thousands of dollars of marital income toward her attorney fees both in prosecuting the petition for dissolution of marriage she filed in California and in connection with the proceedings in this case. Matthew argued that he had been required to borrow money to pay his attorney fees and that a substantial amount of unpaid attorney fees remained. Matthew asserted that the outstanding balance of attorney fees and expenses totaled $25,514.65. Matthew requested that the unpaid attorney fees and expenses be paid from the tax refunds totaling $34,031, which were being held in trust pending the court's order.

¶ 22 On February 5, 2019, the circuit court entered its judgment of dissolution of marriage. In its judgment, the circuit court calculated Amanda's child support obligation at $2322.98 per month but found it equitable to abate Amanda's obligation to pay child support during the summer months that she exercised her parenting time. The circuit court noted that Amanda was responsible for providing her own transportation to and from Illinois when she exercised her parenting time with the children on a monthly basis, the transportation costs during holiday parenting time, and the transportation costs for the children to travel to California in the summer months. The circuit court noted that Amanda also provided health insurance for the children.

¶ 23 In its February 5, 2019, order, the circuit court noted that Matthew had requested indefinite maintenance. The circuit court reviewed the factors found in section 504 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504 (West 2018)). In doing so, the circuit court found that Amanda earned a gross monthly salary of

9

$11,731.99, which included base pay of $7647.60, basic allowance for subsistence of $254.39, BAH of $3777, and a cost of living adjustment of $53. The court then determined Amanda's net pay as $5297.47 per month, the net pay amount revealed on her earnings statement after deducting for federal taxes, Social Security tax, Medicare tax, insurance premiums, retirement contributions of $764.76 and the BAH payment of $3777 per month as an allotment. Adding back the retirement contribution of $764.76, the court thus found that Amanda received a net monthly pay of $6062.23 and that amount decreased to $3743.23, considering Amanda's monthly child support obligation of $2319. In calculating Matthew's income, the circuit court found that Matthew was 38 years old, received tax-free Social Security/Disability payments of $1863 per month, and received $932 per month for the minor children as a dependency allowance. Considering Matthew's receipt of child support, the circuit court calculated Matthew's monthly net income as $5114. The circuit court found that Amanda's net income was therefore $1370.77 less than Matthew's net monthly income of $5114.

¶ 24    In its February 5, 2019, order, the circuit court found that after Matthew's 2007 accident, Matthew worked intermittently through 2013, but when the parties moved to Florida, he stopped working and became a stay-at-home parent. The circuit court found that chronic neck, back, and leg pain prevented Matthew from being gainfully employed. The circuit court also found that Amanda was debt free with the exception of her monthly credit card bills but that Matthew was being ordered to pay his parents the promissory note for his attorney fees in the amount of $15,000. The circuit court noted that Matthew withdrew $80,000 from a marital account in California when the parties separated in May

10

2016, and used $57,400 for a newer vehicle, down payment of the house, remodeling and other family expenses, leaving a balance of $22,600, which remained in a trust account for distribution. The circuit court calculated Matthew's total gross income as $5114 but discredited some of the Matthew's reported monthly expenses that totaled $7515. The circuit court concluded that Matthew had adequate income to provide for his monthly expenses.

¶ 25    Accordingly, after considering all of the factors found in section 504(a) of the Act (750 ILCS 5/504(a) (West 2018)), the circuit court declined to award maintenance to Matthew, concluding that awarding maintenance was not appropriate. The circuit court found that Matthew was receiving a significant amount of financial assets, including three income-producing real properties, that Matthew received more income per month than Amanda, that Matthew was a mechanical engineer and could possibly return to work in the future, that Matthew had placed the dependency allowance from the Social Security Administration in savings accounts for the children for their expenses, and that the combination of the assets received, Social Security benefits, dependence allowance, and child support was sufficient to pay monthly expenses and maintain the standard of living the parties enjoyed prior to their separation.

¶ 26    In its February 5, 2019, judgment, the circuit court awarded Matthew retirement accounts equaling $180,050 and awarded Amanda retirement accounts equaling $256,182. The circuit court awarded Amanda the $22,600 Orr Trust Account and awarded from the tax refunds $27,103 to Matthew and $22,873 to Amanda, to be applied first to each party's attorney fee debts. The circuit court noted that Matthew was

requesting that he receive a portion of Amanda's military retirement benefits and that Amanda be required to apply for retirement benefits as soon as possible. The court ordered, however, that if Amanda received a military pension, Matthew shall receive one-half of the marital portion of the military benefits under the "reserved jurisdiction" approach, wherein Amanda's military retirement pay is allocated for purposes of property settlement in marital dissolution as payments that are received by the retired spouse. The circuit court thus granted Matthew his marital portion of Amanda's military retirement plan if she qualified for it and when she retired and applied for the benefits. The circuit court also denied Matthew's request that Amanda participate in a Survivor Benefit Plan on his behalf.

¶ 27   In its February 5, 2019, judgment, the circuit court noted that neither party had provided a real estate appraisal for the properties. The circuit court therefore valued the properties based on the official assessor's office value and the Zillow.com estimate for the Paris, Illinois property. The circuit court awarded Matthew all tracts of real estate.

¶ 28   On March 7, 2019, Matthew filed a posttrial motion, in which he argued, *inter alia*, that the circuit court improperly subtracted Amanda's BAH of $3777 per month in arriving at her net income, on the basis that her paycheck revealed a BAH deduction because she lived on base. Matthew argued that the evidence revealed that Amanda was receiving the BAH, which was a source of income to be included as income for purpose of calculating child support and maintenance. Matthew also argued that the circuit court improperly valued the property and improperly ordered that he receive one-

half of the marital portion of military benefits from October 2007 through February 2017, instead of the date of dissolution of marriage.

¶ 29    On October 16, 2019, the circuit court entered an order granting partial relief and denying partial relief requested in Matthew's posttrial motion. The circuit court granted the motion to reconsider with regard to Matthew's share of the military pension from the date of marriage on October 13, 2007, until the date of dissolution of marriage, February 5, 2019. The circuit court granted the motion to reconsider to allow Amanda and Matthew to each claim two children as dependents. The circuit court also reconsidered the issue of uninsured medical expenses and found that because of the disparities in income, Amanda shall pay for all uninsured medical, optical, co-pays, and deductible expenses of the minor children. The circuit court found that the Zillow.com estimate for the Paris property was a fair estimate and denied Matthew's request to modify its valuation. The circuit court also denied Matthew's request for attorney fees. The circuit court noted that in its previous order, it equitably divided the tax refunds and applied the refunds to each party's respective attorney fees and costs. The circuit court noted that Matthew received $27,103 from the tax refunds, and his petition for attorney fees requested a balance of $25,514.65.

¶ 30    On November 15, 2019, Matthew filed a notice of appeal.

¶ 31                                II. ANALYSIS

¶ 32                        A. Division and Allocation of Assets

¶ 33    Matthew argues that the circuit court's valuation of marital assets and debts was against the manifest weight of the evidence, that the circuit court erroneously valued the

13

assets and debts by relying upon inadmissible hearsay evidence, and that the circuit court abused its discretion by unjustly allocating the assets and debts to the parties.

¶ 34 The distribution of marital property is a matter within the circuit court's sound discretion, and we will not disturb the court's determination absent an abuse of that discretion. *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 34. "[A]n abuse of discretion occurs only where no reasonable person would take the view adopted by the court." *In re Marriage of Hall*, 278 Ill. App. 3d 782, 785 (1996). The distribution of assets must be equitable in nature but need not be mathematically equal to be equitable. *Hamilton*, 2019 IL App (5th) 170295, ¶ 34. "In effectuating an equitable division of property, it is generally helpful for the court to make specific findings as to the value of large assets, such as real estate." *Id.* ¶ 35. "However, the court is not required to value every asset." *Id.* Like distribution, "the valuation of assets in an action for dissolution of marriage is a question of fact, and the circuit court's determination will not be disturbed absent an abuse of discretion." *In re Marriage of Schneider*, 214 Ill. 2d 152, 162 (2005)

¶ 35 "In order to determine the value of marital assets, the court must have before it competent evidence of value." *Hamilton*, 2019 IL App (5th) 170295, ¶ 36. "While there is no rule of law regarding what type of evidence constitutes 'competent evidence' of value, the value of real estate is ordinarily proven through the testimony of expert witnesses who have conducted appraisals of the property." *Id*. It is the parties' obligation in a dissolution proceeding to present the court with sufficient evidence of property values. *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 40. A circuit court may reach its value determination based only on the evidence presented. *Id.*

14

¶ 36    Although courts have allowed parties to a dissolution to testify regarding the value of their real estate (*In re Marriage of Woolsey*, 85 Ill. App. 3d 636, 637 (1980)), generally, a court's determination of an asset's value "cannot be based on testimony that is not supported by a proper foundation." *Liszka*, 2016 IL App (3d) 150238, ¶ 56. "Even the testimony of a qualified expert may be rejected or found not to be credible evidence of value if it is not based on market analysis or an inspection of the home." *Hamilton*, 2019 IL App (5th) 170295, ¶ 39. It is the responsibility of the parties in a dissolution proceeding to provide the court with sufficient evidence of the value of their property. *Liszka*, 2016 IL App (3d) 150238, ¶ 40. Neither party should be allowed to benefit on appeal from his own failure to introduce competent evidence of value at trial. *In re Marriage of Abu-Hashim*, 2014 IL App (1st) 122997, ¶ 29.

¶ 37    In the case *sub judice*, Matthew argues that the circuit court improperly ignored his competent testimony regarding the Paris property and the 1545 Terre Haute property and improperly relied upon Amanda's inadmissible hearsay evidence, which included valuations of the county assessor and Zillow.com. In his proposed division of marital property and in his testimony, Matthew valued the Paris home at a $14,000 loss; however, the circuit court valued the Paris home at $32,500. Matthew valued the 1545 Terre Haute property at $12,000, with an outstanding $9786 mortgage, the Vigo County, Indiana assessor valued the 1545 Terre Haute property at $38,500, and the circuit court valued the 1545 Terre Haute property at $28,500 ($38,500 - $10,000 loan). The circuit court noted that neither party provided a real estate appraisal for the properties, and

15

therefore, the court based the values on the assessor's office value and the Zillow estimate for the Paris property.

¶ 38 Here, both parties gave an opinion as the value of the Paris property and the 1545 Terre Haute property. Although there is some support for the proposition that a court may consider owner testimony and county tax assessments to be competent evidence of value (*Hamilton*, 2019 IL App (5th) 170295, ¶ 38; *Woolsey*, 85 Ill. App. 3d at 637), the evidence of value is credible if it is based on market analysis or an inspection of the home. In this case, neither party was qualified as an expert in real estate appraisal, and neither provided an expert appraisal or a proper basis for opinion. Amanda submitted documents showing market values as estimated by the Zillow.com website and as determined by the county assessor. While these values were presumably determined through some sort of appraisal process, that process likely did not include an inspection of the actual condition and interior features of the two properties. See *Hamilton*, 2019 IL App (5th) 170295, ¶ 39. On the other hand, in accepting Amanda's values, the court implicitly found Matthew's purported values not credible. Indeed, Matthew's testimony was self-serving and also lacked the bases for his valuation, which would include credible evidence of the original price paid, taxes paid, improvements made, and the current state of the property. *In re Marriage of Vucic*, 216 Ill. App. 3d 692, 703 (1991).

¶ 39 "A party must present sufficient evidence of the value of the property, and where a party has had a sufficient opportunity to introduce evidence but offers none, that party should not benefit on review from its omission." *Abu-Hashim*, 2014 IL App (1st) 122997, ¶ 30. "Otherwise, remanding 'would only protract the litigation and clog the trial courts

with issues which should have been disposed of at the initial hearing.' " *Id.* (quoting *In re Marriage of Smith*, 114 Ill. App. 3d 47, 54-55 (1983)) (because neither party presented meaningful evidence of the business's value, the circuit court's method of valuation was not an abuse of its discretion). Considering all of the circumstances of this case, we find no abuse of discretion. See *Hamilton*, 2019 IL App (5th) 170295, ¶ 45.

¶ 40 Accordingly, we also reject Matthew's argument that because of the undervaluation of the property, the circuit court's division was unjust, inequitable, and an abuse of discretion. Because we have found no error in the circuit court's property valuation, we find that its division of marital assets was equitable and not an abuse of discretion.

¶ 41 Matthew also argues that the circuit court abused its discretion when it denied his request to order Amanda to obtain a survivor benefit of her military pension. Amanda counters that it would be inequitable to award Matthew the survivor benefit because she was 35 years old at the time of the hearing and if she remarried and enjoyed a second marriage of 30 years, she would be unable to provide her second husband the survivor benefit. Amanda further argues that the parties were married 12 years, nearly two of which they had been separated and litigating the divorce, so that if she eventually received a military retirement, she would have been married and living with Matthew for only 10 of the 20 years required to obtain that military retirement benefit.

¶ 42 "The test of proper apportionment of marital property is whether it is equitable, and each case rests on its own facts." *In re Marriage of Coviello*, 2016 IL App (1st) 141652, ¶ 28. Military survivor benefit plans "are a creature of [f]ederal law," and "[a]ny

right to create, modify, or revoke such plans is prescribed by [f]ederal statutes." *In re Marriage of Lipkin*, 208 Ill. App. 3d 214, 218 (1991); see also, *e.g.*, 10 U.S.C. §§ 1447 through 1455 (2018). "The survivor benefit plan provides benefits to a survivor after the service member's death." *Coviello*, 2016 IL App (1st) 141652, ¶ 12.

¶ 43 As a former spouse, Matthew would not be entitled to a survivor benefit unless Amanda voluntarily elected him as the beneficiary or was ordered to do so by the court. See 10 U.S.C. § 1448(b)(2)(A) (2018) (former spouse may be voluntarily named as beneficiary); 10 U.S.C. § 1450(f)(4) (2018) ("A court order may require a person to elect *** to provide an annuity to a former spouse."); *Coviello*, 2016 IL App (1st) 141652, ¶ 12. Survivor benefits are not divisible, meaning if Amanda named Matthew as the beneficiary of the survivorship benefits, she could not name a future spouse as well—she could not split the benefits between them. 10 U.S.C. § 1448(b)(2)(B) (2018) (naming a former spouse as beneficiary prevents payment to a current spouse). Accordingly, the question of the survivorship benefit, unlike many other questions regarding marital property, is an all-or-nothing proposition; the circuit must choose between granting all of the survivor benefits to Matthew or none of them. *Coviello*, 2016 IL App (1st) 141652, ¶ 13. Moreover, if the court awarded Matthew this survivorship benefit, Amanda's monthly pension payment would be reduced accordingly by the premiums paid for that benefit. *Id.* ¶ 14.

¶ 44 Considering the parties' ages, length of marriage, and the length of Amanda's military career, we conclude that the circuit court did not abuse its discretion in denying Matthew's request to award him the survivor benefit on Amanda's pension. For the same

18

reasons, we also reject Matthew's alternative assertion that the circuit court abused its discretion by not ordering Amanda to obtain a life insurance policy with Matthew listed as the beneficiary. As noted by Amanda, the circuit court ordered her to maintain the children as beneficiaries on her life insurance policy, ensuring that they would be cared for in the event of her death.

¶ 45 We further reject Matthew's argument that the circuit court abused its discretion when it refused to order Amanda to apply for military retirement benefits as soon as administratively possible. Amanda's right to receive retirement benefits is contingent on her remaining in the military for 20 years, which she has not yet done. Moreover, the circuit court equitably allocated 50% of the marital portion of Amanda's military pension to Matthew. We find no abuse of discretion.

¶ 46 B. Deviation From Child Support Guidelines

¶ 47 Matthew argues that the circuit court abused its discretion when awarding child support because it erroneously abated child support during the summer month of Amanda's extended parenting time with the children.

¶ 48 Awarding child support falls within the sound discretion of the circuit court, and this court will not disturb the circuit court's determination absent an abuse of that discretion. *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 66. A circuit court abuses its discretion when no reasonable person would take the view adopted by the court. *Id.* Within the circuit court's discretion "is the ability to deviate from the statutory child support guidelines." *Id.*; 750 ILCS 5/505(a)(3.4) (West 2018) ("The court may deviate from the child support guidelines if the application would be inequitable, unjust, or

19

inappropriate."); see also *In re Marriage of Hill*, 2015 IL App (2d) 140345, ¶ 28 (noting that a circuit court's decision to deviate from child support guidelines "will not be disturbed absent an abuse of discretion"). However, in order to deviate from the guidelines, the circuit court must give "written findings *** specifying the reasons for the deviation and the presumed amount under the child support guidelines without a deviation." 750 ILCS 5/505(a)(3.4) (West 2018); see also *In re Marriage of Gabriel*, 2020 IL App (1st) 182710, ¶ 56; *Vance*, 2019 IL App (4th) 190136, ¶ 66. These reasons may include any factor "the court determines should be applied upon a finding that the application of the child support guidelines would be inappropriate, after considering the best interest of the child." 750 ILCS 5/505(a)(3.4)(C) (West 2018).

¶ 49    Likewise, section 505(a)(2) of the Act provides that in determining child support in each case, the court shall apply "the child support guidelines unless the court makes a finding that application of the guidelines would be inappropriate, after considering the best interests of the child and evidence which shows relevant factors," including the child's financial resources and needs, the parents' financial resources and needs, the standard of living had the marriage not been dissolved, and the child's physical and emotional condition and his educational needs. *Id.* § 505(a)(2).

¶ 50    In its judgment of dissolution of marriage, the circuit court found that a two-month summer abatement, and thus a downward deviation, of the child support guidelines was appropriate for the extended eight-week period that Amanda exercised her parenting time with the children each summer. In its order, the circuit court determined that it would be inequitable if Amanda paid child support during her parenting time with the children in

20

the summer months. The circuit court made written findings that Amanda was responsible for providing for her own transportation to and from Illinois during her visits with the minor children on a monthly basis and on holiday visits and that she was also responsible for the children's transportation costs to California during the extended summer-month time period. In so finding, the court recognized that Amanda would incur significant travel expenses to exercise her parenting time with the children and that this parenting time served the children's best interests. In its order, the circuit court also found that Amanda was responsible for bearing the cost of health insurance for all four children and all of the children's uninsured medical expenses. The findings relate to "the financial resources and needs" of the parents and the children (*id.* § 505(a)(2)(A), (B)) and the best interest of the children (*id.* § 505(a)(2)) and are thus appropriate bases for finding that a deviation from the guidelines was warranted. Accordingly, the circuit court made the necessary written findings, and we cannot say that it abused its discretion in determining that a deviation was appropriate. We cannot conclude that the circuit court abused its discretion in abating child support for the eight weeks during the summer that Amanda exercises parenting time with the children.

¶ 51                                    C. Maintenance

¶ 52    Matthew argues that the circuit court's BAH deduction of $3777 per month when calculating Amanda's income for maintenance purposes was improper. Matthew argues that the Act required the circuit court to include Amanda's BAH in her net income to determine the propriety of a maintenance award. We agree.

21

¶ 53    Pursuant to section 504(a) of the Act, "the court may grant a maintenance award for either spouse in amounts and for periods of time as the court deems just, without regard to marital misconduct, and the maintenance may be paid from the income or property of the other spouse." 750 ILCS 5/504(a) (West 2018). The court shall first make a finding as to whether a maintenance award is appropriate, after considering all relevant factors, including each party's income and property, each party's needs and realistic earning capacity, any impairment of earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed employment or career opportunities due to the marriage, any impairment of earning capacity of the party against whom maintenance is sought, the time necessary to enable the party seeking maintenance to acquire employment or whether that party is unable to support himself through appropriate employment, the effect of parental responsibility arrangements on a party's ability to seek or maintain employment, the standard of living established during the marriage, the marriage's duration, each party's age, health, station, occupation, and employability, all sources of public and private income, the tax consequences to each party, and contributions or services by the party seeking maintenance to the education, career, and career potential of the other spouse. *Id.* In considering the statutory factors to determine whether to grant a spousal maintenance award, the circuit court is not required to give them equal weight so long as the court's balance is reasonable under the circumstances. *In re Marriage of Nord*, 402 Ill. App. 3d 288, 293 (2010). If the court determines that a maintenance award is warranted, the duration and amount of the award are calculated using the statutory guideline formulas

22

unless the court finds that there is reason to depart from the guidelines. See 750 ILCS 5/504(b-1), (b-2) (West 2018); see also *In re Marriage of Harms*, 2018 IL App (5th) 160472, ¶ 1.

¶ 54 Pursuant to section 504(b-3) of the Act, the term "gross income" means "all income from all sources, within the scope of that phrase" in section 505 of the Act. 750 ILCS 5/504(b-3) (West 2018). Section 505 of the Act provides that subject to specified exceptions, "gross income" is defined as "the total of all income from all sources" (*id.* § 505(a)(3)(A)) and "net income" is defined as gross income minus federal and state income taxes, Social Security tax, and Medicare tax (*id.* § 505(a)(3)(B), (C), (D)). For child support purposes, our supreme court has broadly defined "income" to include "gains and benefits that enhance a noncustodial parent's wealth and facilitate that parent's ability to support a child or children." *In re Marriage of Mayfield*, 2013 IL 114655, ¶ 16 (citing *In re Marriage of Rogers*, 213 Ill. 2d 129, 136-37 (2004)). Our courts have found the definition of income to be broad enough to include military allowances. See *In re Marriage of Fortner*, 2016 IL App (5th) 150246, ¶ 18 (cases listed therein); see also *In re Marriage of Baylor*, 324 Ill. App. 3d 213, 217 (2001) (circuit court erred by failing to include military allowances when calculating net income). Whether a payment to a parent falls within the definition of income is a question of law, subject to *de novo* review. *In re Marriage of McGrath*, 2012 IL 112792, ¶ 10.

¶ 55 In this case, the circuit court found that Amanda earned a gross monthly salary of $11,731.99, which included base pay of $7647.60, basic allowance for subsistence of $254.39, BAH of $2777, and a cost of living adjustment of $53. The court then

23

determined Amanda's net pay as $5297.47 per month, the amount revealed on her earnings statement after deducting for federal taxes, Social Security tax, Medicare tax, insurance premiums, retirement contributions of $764.76 and the BAH payment of $3777 per month as an allotment. Adding back the retirement contribution of $764.76, the circuit court thus found that Amanda received a net monthly pay of $6062.23, and the circuit court considered Amanda's monthly child support obligation and decreased that amount to $3743.23. In calculating Matthew's income, the circuit court found that Matthew was 38 years old, received tax-free Social Security/Disability payments of $1863 per month, and received $932 per month for the minor children as a dependency allowance. Considering child support of $2319 per month, the circuit court calculated Matthew's monthly net income as $5114. The circuit court found that Amanda's net income was therefore $1370.77 less than Matthew's net monthly income of $5114.

¶ 56    In reaching its calculation of Amanda's net income in order to determine the propriety of a maintenance award for Matthew, the circuit court erroneously failed to include Amanda's monthly military allowance for housing, which had been deducted as an allotment on her earnings statement. Instead, Amanda's net income should have included the BAH allowance of $3777. See *Fortner*, 2016 IL App (5th) 150246, ¶ 18 (cases listed therein); *Baylor*, 324 Ill. App. 3d at 217. Including as income Amanda's BAH allowance of $3777, Amanda's net monthly income increases to $9839.23, as opposed to $6062.23, a notable increase for purposes of determining the propriety of a maintenance award.

¶ 57    Moreover, Amanda's earning statement revealed that she paid monthly federal taxes of $1215, and that the parties' 2018 income tax return revealed that in 2018, the parties over-withheld annual federal taxes equaling $14,500. Because their tax amount due equaled $11,593, they received a refund credit of $2907. This disparity between federal income tax withheld and federal income tax paid should also be accounted for in calculating income. See generally *In re Marriage of Eastburg*, 2016 IL App (3d) 150710, ¶ 13 (disparity between federal income tax withheld and federal income tax paid should be accounted for in calculating child support payments under the Act).

¶ 58    Amanda argues that the circuit court properly determined that her net monthly income was $3743.23, after child support was deducted. Amanda argues that if her BAH were added into this calculation, her net monthly income would be $7520.23 while she was stationed in San Pedro. Amanda notes, however, that the evidence at trial revealed that she was being reassigned to Vandenberg Air Force Base and that her BAH would be reduced to $2175; thus, at her new duty station, with the BAH included, her net income would be $5918.23, without dependents. Amanda argues that if the circuit court erred in calculating Amanda's net income, the error was harmless because Amanda's net income would be only slightly higher than Matt's net monthly income of $5114.

¶ 59    Although Amanda asserted that her BAH will be reduced in the future because her dependents will not be living with her full time, the circuit court nevertheless should have considered the evidence before it, including income that included the military allowance. See *Rogers*, 213 Ill. 2d at 138 ("If a parent has received payments that would otherwise qualify as 'income' under the statute, nothing in the law permits those payments to be

25

excluded from consideration merely because like payments might not be forthcoming in the future."). We thus reverse the circuit court's decision with regard to maintenance, and we remand the cause to the circuit court to reevaluate the propriety of a maintenance award for Matthew considering Amanda's military allowance as income.

¶ 60                                     D. Attorney Fees

¶ 61    Matthew argues that the circuit court abused its discretion when it denied his request for attorney fees because of the incorrect valuation of the real estate allocated to Matthew, the inequitable allocation of cash or cash equivalent marital property, and the great disparity in income between the parties. Amanda counters that the circuit court did not abuse its discretion in finding that Matthew had the ability to pay his attorney fees, considering that Matthew received in excess of $200,000 in liquid assets to pay his $8845.20 in outstanding attorney fees.

¶ 62    In his petition for attorney fees, Matthew requested that the unpaid attorney fees and expenses be paid from the tax refunds, which were being held in trust pending the order of the court. The circuit court ostensibly accepted this proposal.  In its order, the circuit court awarded Matthew $27,103 in tax refund proceeds and ordered that these proceeds "go first to each party's attorney to be applied to the outstanding attorney fees debts." Nonetheless, Matthew argues that the circuit court erred in denying his request for Amanda to pay his attorney fees.

¶ 63    "After proofs have closed in the final hearing on all other issues between the parties (or in conjunction with the final hearing, if all parties so stipulate) and before judgment is entered, a party's petition for contribution to fees and costs incurred in the

26

proceeding shall be heard and decided." 750 ILCS 5/503(j) (West 2018). An award of contribution to the attorney fees of one party from the other party "shall be based on the criteria for division of marital property *** and, if maintenance has been awarded, on the criteria for an award of maintenance." *Id.* § 503(j)(2); see also 750 ILCS 5/508(a) (West 2018) (providing that contribution to opposing party's attorney fees "may be awarded *** in accordance with subsection (j) of Section 503"). Because we are remanding the cause to the circuit court to determine whether a maintenance award is appropriate, we also direct the circuit court to determine if payment of attorney fees remains inappropriate. Accordingly, on remand, after considering the proper income calculations and determining whether maintenance is appropriate, the circuit court is directed to consider whether an award for attorney fees is appropriate, considering its maintenance redetermination. We recognize that if the circuit court determines that maintenance is appropriate, its child support award may also be affected.

¶ 64                                III. CONCLUSION

¶ 65    In sum, we reverse the circuit court's judgment in part and remand the cause to the circuit court to determine whether an award of maintenance is appropriate, after considering Amanda's properly calculated income, which would include her BAH military allowance, and to determine, in light of its maintenance determination, among other considerations, whether an award of attorney fees is appropriate. We affirm the circuit court's judgment in all other respects.


¶ 66    Affirmed in part and reversed in part; cause remanded.